## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSANNA O. STEPHENS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LYDIA PLESKUN )<br><br>*Plaintiff,* )<br><br>*vs.* )<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC; U.S. BANK TRUST NAT'L ASS'N, AS TRUSTEE OF DWELLING SERIES IV TRUST )<br><br>*Defendants* ) | C.A. NO.  22-CV-10225-ADB |

## <u>PLAINTIFF' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Pursuant to Fed. R. Civ. P. 65, the Plaintiff, Susanna O. Stephens, Individually and as Personal Representative of the Estate of Lydia Pleskun, having received a Notice of Sale from Demerle Hoeger, LLP, announcing a foreclosure on her home to be auctioned on May 5, 2022, moves this Honorable Court for a temporary restraining order and preliminary injunction restraining and enjoining Defendants from conducting a foreclosure auction on his property located at 578 Locustfield Road, East Falmouth, MA 02536.   (See Exhibit A).   Plaintiff respectfully request the court consider this motion and place it down for hearing prior to the pending foreclosure set for May 5, 2022.  Opposing counsel has notified Plaintiff's counsel that he will be away from April 13th until April 19th, 2022.  Therefore, Plaintiff respectfully requests a hearing date between to April 20th and May 4, 2022.

The underlying action alleges that the Defendants, Rushmore Loan Management Servicing and US Bank, are not authorized to accelerate or foreclose Plaintiff's mortgage as those actions are in breach of default notice provisions of Paragraph 22 of their mortgage as the Defendants failed to send the Plaintiff a proper Notice of Default pursuant to paragraph 22 of the mortgage prior to acceleration and sale that strictly complies with the terms of the mortgage pursuant to G.L. c. 182, section 21. (See Exhibit B).  Pinti v. Emigrant Mortgage Company, Inc., 472 Mass. 226 (2015).

On December 1, 2021, Defendants, through their attorney Demerle Hoeger LLC, sent Plaintiff a purported acceleration notice that stated that the Plaintiff "*may* still have the right to reinstate the loan" and "please also note, however, that the Holder reserves the right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due".  (See Exhibit C).  The above statement is additional and unnecessary language that is not in strict compliance with the Plaintiff's mortgage because it may serve to water down, overshadow, contradict or nullify the Plaintiff's unequivocal right to reinstate her mortgage. *See* Fed. Nat'l Mortg. Ass'n v. Marroquin, 477 Mass. 82, 90 (2017) ("rather than unequivocally inform the borrower of the right to bring a court action to attempt to prevent a foreclosure by asserting that there was no default or by invoking another defense, the notice of default stated that the borrower may have the right to bring such an action. Here, too, the implication is that the right is merely conditional, without specifying the conditions, and that the mortgagor may not have the right to file an action in court"). As such, the Defendants failed to provide the Plaintiff proper Notice of Default and Notice of Acceleration in breach of the Mortgage contract and are in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale, rendering any acceleration, foreclosure, and sale void.   The

Defendants' failure to strictly comply with Paragraph 22 of the Mortgage is a condition precedent to foreclosure under G. L. c. 244, § 14.

The Plaintiff has owned this property as her residential home and has begun the process to apply for a reverse mortgage. The Defendants have refused to cancel or postpone the foreclosure sale scheduled for May 5, 2022 despite the strict compliance issues with their notice of default and acceleration.

## STANDARD OF REVIEW

Entitlement to a preliminary injunction requires that the movant demonstrate that (1) the movant has a substantial likelihood of success on the merits, (2) the movant bears a significant risk of irreparable harm if the provisional relief is withheld, (3) the balance of equities is in its favor, and (4) the granting of the injunction will not adversely affect the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003), Winter v. Nat'l Res. Def. Council, 555 U.S. 7, 20 (2008); People's Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9 (1st Cir. 2012); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

If the court is convinced that the failure to issue an injunction would subject the moving party to a substantial risk of irreparable harm, it balances this risk against the risk of harm which granting the injunction would create for the opposing party. Id. A preliminary injunction should issue where the balance of the risks favors the moving party. Id. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980).

## FACTS

Plaintiff, Susanna O. Stephens, resides at and claims to be the owner of real property located 578 Locustfield Road, East Falmouth, MA 02536, which is the subject property as referenced herein. On September 27, 1993, the subject property was granted to Lydia Pleskun.

3

The Deed evidencing transfer of the ownership of the subject property was recorded in the Barnstable County Registry of Deeds in Book 8822 and Page 122 on October 8, 1993.

On December 23, 2014, Lydia Pleskun passed away, leaving the subject property to her daughter Susanna O. Stephens.   The Death Certificate was recorded in the Barnstable County Registry of Deeds in Book 29364 at Page 226 on December 29, 2015.

On June 6, 2007, the subject property was granted to Plaintiff Susanna O. Stephens as sole owner. The Deed evidencing transfer of the ownership of the subject property was recorded in the Barnstable County Registry of Deeds in Book 30817 and Page 341 on October 10, 2017.

On February 17, 2006, Lydia Pleskun and Rick Herring were granted a Mortgage loan, secured by the subject property, in the amount of $198,900.00, which was recorded in the Barnstable County Registry of Deeds in Book 20799 at Page 154 on March 7, 2006. (the Pleskun Mortgage) The Mortgage identified Mortgage Electronic Registration Systems as Mortgagee and Taylor, Bean & Whitaker Corp. as the Lender.  (See Exhibit B)

The Pleskun Mortgage states at paragraph 22 as follows;

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Paragraph 22 of the Pleskun Mortgage required that prior to acceleration and foreclosure the Defendants were required to send the Plaintiffs a Default Notice which informed said Plaintiffs that they had a "right to reinstate after acceleration". The "right to reinstate after acceleration" contained in the Pleskun Mortgage is described in Paragraph 19 of the Mortgage as follows:

19. Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time *prior to the earliest of: (a) five days before* the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those *conditions* are that Borrower: (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred*; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. *Upon reinstatement* by Borrower, this Security Instrument and *obligations* secured hereby *shall remain fully effective as if no acceleration had occurred*.  However this right to reinstate shall not apply in the case of acceleration under Section 18."

(emphasis added)

On December 15, 2015, MERS purportedly assigned the Pleskun Mortgage to Nationstar Mortgage.  Said assignment was recorded in the Barnstable County Registry of Deeds in Book 29364 at Page 222 on December 29, 2015.

On January 31, 2018, Nationstar purportedly assigned the Pleskun Mortgage to Specialized Loan Servicing.  Said assignment was recorded in the Barnstable County Registry of Deeds in Book 31061 at Page 81 on January 31, 2018.

On June 22, 2020, SLS purportedly assigned the Pleskun Mortgage to US Bank.  Said assignment was recorded in the Barnstable County Registry of Deeds in Book 33010 at Page 300 on June 24, 2020.

On October, 30, 2020, US Bank purportedly assigned the Pleskun Mortgage to Defendant US Bank with Defendant Rushmore acting as mortgage servicer.  Said assignment was recorded in the Barnstable County Registry of Deeds in Book 33650 at Page 181 on January 6, 2021.

On December 1, 2021, Defendants, through their attorney Demerle Hoeger LLC, sent Plaintiff a purported acceleration notice that stated that the Plaintiff "*may* still have the right to reinstate the loan" and "please also note, however, that the Holder reserves the right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due".  (See Exhibit C).  The above statement is additional and unnecessary language that is not in strict compliance with the Plaintiff's mortgage because it may serve to water down, overshadow, contradict or nullify the Plaintiff's unequivocal right to reinstate her mortgage. Fed. Nat'l Mortg. Ass'n v. Marroquin, 74 N.E.3d 592 (Mass. 2017).

As such, the Defendants failed to provide the Plaintiff proper Notice of Default and Notice of Acceleration in breach of the Mortgage contract and are in violation of G. L. c. 183, § 21 for failure to first comply with the terms of the mortgage prior to exercising the power of sale,

rendering any acceleration, foreclosure, and sale void.  The Defendants' failure to strictly comply with Paragraph 22 of the Mortgage is a condition precedent to foreclosure under G. L. c. 244, § 14.

The Plaintiff in the above case is seeking an immediate Temporary Restraining Order to prevent the foreclosure sale on May 5, 2022, and further, a preliminary injunction to prevent future foreclosure sales until this case has been decided on the merits.  The Plaintiff meets all of the required elements for a TRO and preliminary injunction.

**A.**    **Plaintiff is likely to succeed on the merits**

In the instant action, the Plaintiff' likelihood of success on the merits is strongly supported by the facts and case law. In their complaint the Plaintiff has pled well-supported allegations that the foreclosing entity did not comply strictly with the terms of the mortgage contract. Massachusetts permits non-judicial foreclosure under the statutory power of sale contained at G. L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to the power of sale are strictly complied with.  As described above, on December 1, 2021, Defendants, through their attorney Demerle Hoeger LLC, sent Plaintiff a purported acceleration notice that stated that the Plaintiff "*may* still have the right to reinstate the loan" and "please also note, however, that the Holder reserves the right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due".  (See Exhibit C).  The above statement is additional and unnecessary language that is not in strict compliance with the Plaintiff's mortgage because it may serve to water down, overshadow, contradict or nullify the Plaintiff's unequivocal right to reinstate her mortgage. Fed. Nat'l Mortg. Ass'n v. Marroquin, 74 N.E.3d 592 (Mass. 2017).

Such language "significantly, and inexcusably, differed from, watered . . . down, and overshadowed the notice that was contractually and legally required by the mortgage." Marroquin at 85. The Plaintiff set forth that Rushmore Loan Management Servicing and US Bank retained Demerle Hoeger to foreclose the subject matter mortgage and caused to be published a Notice of Mortgagee's Foreclosure Sale, stating a scheduled mortgagee's sale date of May 5, 2022 despite being notified by the Plaintiff of these errors.

This case concerns the use of the conditional word "may" when describing an unequivocal right when notification of that unequivocal right requires strict compliance. The problem with the word "may" when describing an unequivocal right that a mortgagor is required to be notified of in strict compliance with the default acceleration terms outlined in paragraph 22 of this mortgage was explored by the SJC in the case of Fed. Nat'l Mtg. Ass'n v. Marroquin, 477 Mass. 82 (2017). The Marroquin opinion stated that when using the word "*may*" when describing an unequivocal right "the implication is that the right is merely conditional, without specifying the conditions, and that the mortgagor may not have the right". Id. at 90

The "right to reinstate after acceleration" is an unequivocal right that can not be made conditional by the use of the word "may" when describing it. *See also* Thompson v. JP Morgan Chase Bank, NA, 486 Mass. 286, 294 (2020) (Massachusetts SJC describes the right to reinstate as "a mortgagee's *unequivocal* reinstatement rights"). For the implication when using the word "may" when describing an unequivocal right implies that the borrower "may not" have the right and that the right is equivocal. Marroquin at 85. A proper analogy of the use of the conditional word "may" when describing an unequivocal right was aptly described by the lower court judge in the Marroquin case who compared it to law enforcement advising someone being arrested that he or she "*may* have a right to remain silent" or "*may* have a right to an attorney". See Marroquin

at 85 *4.  If a person being arrested was so dubiously advised of his or her unequivocal right to remain silent, any evidence obtained as a result of statements made thereafter would be suppressed.  Likewise, in accordance with the standard of strict compliance for such notice of the unequivocal right to reinstate in this case, any foreclosure performed after the ambiguous notification of non-existent conditions on this unequivocal right by the use of the word "may" should render a subsequent foreclosure void.  Furthermore, the fact that the Defendants may attempt to state that they previously notified the Plaintiffs of this unequivocal right in a prior notice was negated and "*overshadowed"* by the subsequent notice that inaccurately and deceptively implied conditions on an unequivocal right.  Marroquin at 85.  Drawing back to the Marroquin law enforcement analogy, the Defendants' contention that the previous notification ends the analysis would be as if a law enforcement officer advised an arrestee of his or her right to remain silent at the initial arrest but then later at the police station advised the arrestee that he or she "may" have a right to remain silent before procuring a confession.  Likewise in this case the previous notice that advised the Plaintiffs of their right to reinstate was "*overshadowed*" by the inaccuracy and potential confusion that could be caused by the subsequent acceleration notification which implied an incomplete and different list of conditions from those outlined in Paragraph 19 of the Mortgage on the unequivocal right to reinstate at the time of the foreclosure.  Common sense dictates that strict compliance with notification of the rights outlined in Paragraph 22 is a continuing obligation of the Defendants under the terms of the Mortgage.  Consequently, a subsequent notice that creates inaccuracy and potential deception as to an unequivocal right required to be strictly notified overshadows and negates strict compliance with the Mortgage and should likewise void a subsequent foreclosure.  Therefore, the Defendants' contention that the Plaintiffs were notified of the right to reinstate in a previous notice is unavailing.

Plaintiff also alleges that prior to acceleration and the initiation of foreclosure proceedings they did not receive and Defendants failed to send a proper notice of default in strict compliance with Paragraph 22 of the Pleskun Mortgage.  Plaintiff have alleged herein above that any notice sent purporting to state compliance with paragraph 22 of the Pleskun Mortgage failed to contain the required information as described in said paragraph and further failed to state with specificity the conditions Plaintiff was required to meet in order to exercise their right to reinstate the mortgage after acceleration pursuant to paragraph 19 of the Pleskun Mortgage.  As such, there was no compliance with the terms of the mortgage which would have allowed the Defendants to exercise the statutory power of sale as indicated above.  See Pinti v. Emigrant Mortgage Co., 472 Mass. 226 (2015).

**B.      Plaintiff' will suffer irreparable harm**

There are few greater harms that can be done to an individual, or a family, than to be foreclosed on and forcibly evicted from their home.  Should Defendants not be enjoined, the Plaintiff duly noted herein, will suffer that very fate.  Once foreclosed and evicted, Plaintiff will be irreparably harmed.  Should Defendants gain possession and/or convey the property, the Plaintiff would clearly suffer a loss of rights which cannot be vindicated should they prevail on the merits of their claims.

A piece of real property is unique and its loss is an irreparable injury. Due to its' nature, the Plaintiff' losses are not fully compensable by money damages and would be difficult to calculate.  The injury includes relocation costs, commuting to a new location, additional time needed to relocate, loss of community and stability and the high potential for homelessness.  Because of the magnitude and nature of the injury, the Plaintiff cannot be fully compensated by money damages alone and therefore the harm is irreparable.

Additionally, there exists no other remedy Plaintiff herein can seek to prevent the irreparable harm that will befall him should the relief they seek herein not issue, nor can a trial on the merits can be conducted before the injury occurs. (See <u>Owen M. Fiss & Doug Rendlemen, Injunctions </u>59 (2nd ed. 1984). In the context of a request for a permanent injunction, "irreparable harm" means that the moving party does not have an adequate remedy at law, ordinarily damages.). (See also: <u>Packaging Indus. Grp.</u> *Id.* at 106, 112 n.11. "In the context of a preliminary injunction the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity."). (See generally: 11 C.A. Wright & A.R. Miller, § 2948, at 431-441: "Irreparable harm is absent if trial on the merits can be conducted before the injury occurs.").

As no other remedy exists to Plaintiff preventing the harm, as Plaintiff may suffer a loss of rights that cannot be vindicated should they prevail after a full hearing on the merits, and a trial on the merits cannot be conducted before the potential injury occurs, the Plaintiff have satisfied that he will be irreparably harmed should the relief they herein seek not issue.

## C.     Balance of Equities

"…[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the Judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue."

(See Packaging Indus. Grp. *Id.* at 112, citing Leubsdorf, at 540-544; Note, Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction, 71 Colum. L. Rev. 165 (1971); 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure, § 2948, at 453-454 (1973)).

As noted above, the Plaintiff were not provided with a proper notice of default pursuant to Paragraph 22 of their mortgage which requires strict compliance or the foreclosure is null and void. Pinti v. Emigrant Mortgage Co., 472 Mass. 226 (2015).  The risk of harm to the Plaintiff, foreclosure and eventual eviction, far surpasses any risk of minimal harm to the Defendants in having the foreclosure sale temporarily delayed until the case is decided on the merits. The balance of equities in this case clearly cuts in favor of the moving party Plaintiff.

**D.      The Injunction is in the Public Interest**

It is in the public interest of a State to prevent wrongful foreclosure sales and evictions and maintain for its citizens the broadest protections possible under State foreclosure and eviction laws to avoid displacement and resultant loss of housing, which, due to housing's uniqueness as the most costly and difficult to change necessity of life, causes overcrowding, unsafe and unsanitary conditions, blight, burdens on community services, wasted resources, homelessness, emigration from the State and personal hardship, which is particularly severe for vulnerable seniors, the disabled, the frail, minorities, large families and single parents.  As such, it is in the public interest here to prevent the Plaintiff from suffering the irreparable harm of being foreclosed upon and ultimately forcibly evicted from their rightful property and home, especially in light of their clear demonstration of a likelihood of success of their claims on the merits and the minimal risk of harm to the non-moving party.

## **CONCLUSION**

Here, as the Plaintiff have satisfied the standards that she has a likelihood of success on the merits, that she will suffer irreparable harm, that the balance of equities in this case clearly cuts in her favor, and that the injunction is in the Public Interest, a preliminary injunction may properly issue.

WHEREFORE the Plaintiff, Susanna O. Stephens, Individually and as Personal Representative of the Estate of Lydia Pleskun, respectfully requests this Honorable Court grant her Motion for Temporary Restraining Order and Motion for Preliminary Injunction, enjoining Defendant from conducting a foreclosure sale on her property and forcibly evicting from property.

Dated:  April 13, 2022

<div style="margin-left:40%">

Respectfully Submitted,
Plaintiff,
By her Attorney,


/s/ Todd S. DIon_____
Todd S. Dion Esq. (#659109)
15 Cottage Avenue, Suite 202
Quincy, MA 02169
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

</div>

## **VERIFICATION**

I, Susanna O. Stephens, hereby declare under the pains and penalties of perjury, that the above allegations are true and correct to the best of my knowledge.


  /s/ Susanna O. Stephens_____
Susanna O Stephens

## LOCAL RULE CERTIFICATION

I, Todd S. Dion, hereby certify that I attempted to confer with Defendants' counsel concerning this Motion for TRO on April 12, 2022

/s/ Todd S. Dion_____

## CERTIFICATE

I, Todd S. Dion, hereby certify that this document frilled through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on April 13, 2022.

/s/ Todd S. Dion_____