UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSANNA O. STEPHENS, *Individually and as Personal Representative of the Estate of Lydia Pleskun*, <br><br> Plaintiff, <br><br> v. <br><br> RUSHMORE LOAN MANAGEMENT SERVICES, LLC; U.S. BANK TRUST NAT'L ASS'N, as Trustee of DWELLING SERIES IV TRUST, <br><br> Defendants. | Civil Action No. 22-cv-10225-ADB |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Currently before the Court is Plaintiff Susanna O. Stephens' ("Plaintiff") motion for a temporary restraining order and preliminary injunction to postpone a foreclosure sale on her residence, [ECF No. 9], which is currently set for May 26, 2022. As more fully set forth below, the motion, [ECF No. 9], is <u>DENIED</u> because Plaintiff has not shown that she is likely to prevail on the merits. That being said and the ruling notwithstanding, the Court once again urges the Defendants to consider allowing some additional time for Plaintiff to secure a reverse mortgage which would obviate the need for a foreclosure sale and the harm that will cause.

1

I.       BACKGROUND

    A.       Factual Background

Plaintiff currently resides at 578 Locustfield Road, East Falmouth, MA 02536 (the "Property"). [Am. Compl. ¶ 12]. She brings this suit against Rushmore Loan Management ("Rushmore") and U.S. Bank Trust National Association as Trustee of Dwelling Series IV Trust ("U.S. Bank") (collectively the "Defendants"), contesting their right to foreclose on the property based on an alleged failure to strictly adhere to the procedural prerequisites. [Id. ¶ 2].

The Property was granted to Plaintiff's mother, Lydia Pleskun, on September 27, 1993. [Am. Compl. ¶ 13]. Several years later, on February 17, 2006, Pleskun and Rick Herring[1] executed a Promissory Note in the amount of $198,900.00 in favor of Taylor, Bean, & Whitaker Corp. and were granted a mortgage (the "Mortgage") secured by the Property in that same amount. [Id. ¶ 15; ECF No. 16 at 2]. Paragraph 22 of the Mortgage states that prior to acceleration and foreclosure, Defendants are required to send the Borrowers a notice of default informing them of the right to reinstate after acceleration and to challenge the default in court. [Id. ¶ 18]. Paragraph 22 reads in pertinent part:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument...The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this

---

[1] At the hearing on Plaintiff's emergency motion, [ECF No. 22], Plaintiff's counsel informed the Court that Mr. Herring is Plaintiff's former husband, but neither party has claimed that he was ever an owner of the property, [ECF No. 19 at 2 n.1; Am. Compl. ¶ 16].

> Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

[Id. ¶ 17 (emphasis added)].  The right to reinstate after acceleration is described in Paragraph 19 of the Mortgage, in pertinent part, as follows:

> 19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

[Am. Compl. ¶ 18].

Ms. Pleskun, the property owner, passed away in December 2014, allegedly leaving the property to Plaintiff.  [ECF No. 9 at 4].  Plaintiff was appointed as the personal representative of Pleskun's estate in February 2016.  [Am. Compl. ¶ 17].  On June 6, 2017, Herring purportedly granted the Property to Plaintiff as the sole owner, apparently believing that he had an ownership interest in the property, although Defendants argue that Herring never held any ownership in the Property and therefore had no authority to transfer it to Plaintiff.  [ECF No. 16 ¶ 6].

After several prior transfers, on October 30, 2020, the Mortgage was assigned to US Bank with Rushmore acting as mortgage servicer.  [Am Compl. ¶ 22].  On February 5, 2021, Rushmore sent a Notice of Default pursuant to the Promissory Note and Mortgage.  [ECF No. 19 ¶ 10]; see also [ECF No. 16-10].  The Notice of Default properly stated that "[y]ou have the right

3

to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." [ECF No. 16-10 at 8; ECF No. 19-10 at 8]. Subsequently on December 1, 2021, Defendants sent a Notice of Acceleration that said that the Borrowers "*may* still have the right to reinstate the loan" and further added "please also note, however, that the Holder reserves the right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due." [Am. Compl. ¶ 23].

As of the date of the Notice of Default, Plaintiff had failed to make the last 47 monthly loan payments, the earliest missed payment being April 2017, with the past due amount then totaling $75,798.45. [ECF No. 16 ¶ 12; ECF No. 16-10 at 2–6]. Plaintiff has not made a payment towards the Mortgage in the past five years.

A foreclosure sale is currently scheduled for May 26, 2022. See [ECF No. 22].

**B.   Procedural History**

On December 17, 2021, Plaintiff filed her initial complaint in state court in her individual capacity and as a representative of the estate of Lydia Pleskun. [ECF No. 1-3]. Defendants removed the complaint to this Court on February 10, 2022. [ECF No. 1]. On April 13, 2022, Plaintiff filed her emergency motion for a temporary restraining order ("TRO") and preliminary injunction because a foreclosure auction was scheduled for May 5, 2022. [ECF No. 9]. Thereafter, on April 22, 2022, Plaintiff filed an amended complaint that brings a single count alleging that because Defendants failed to provide proper notice of default and acceleration, any acceleration, foreclosure, or sale is void.[2] [ECF No. 12]. Defendants filed a motion to dismiss

---

[2] The amended complaint also included a Declaratory Judgment Count, which has since been voluntarily dismissed by Plaintiff. [ECF No. 13].

the amended complaint on April 29, 2022, [ECF No. 15], and opposed the TRO motion on May 2, 2022, [ECF No. 19]. The Court held a hearing on the TRO motion on May 3, 2022. [ECF No. 22]. Although Defendants oppose the TRO, they agreed to postpone the sale, originally set for May 5, 2022, until May 26, 2022 to allow the Court time to rule on Plaintiff's motion.

## II.     LEGAL STANDARD

"In evaluating a motion for a temporary restraining order, the Court considers the same four factors that apply to a motion for preliminary injunction, that is: the likelihood the movant will succeed on the merits, whether the movant is likely to suffer irreparable harm in the absence [of] preliminary relief, the balance of equities, and whether an injunction is in the public interest." Kilmowicz v. Deutsche Bank Nat'l Tr. Co., 192 F. Supp. 3d 251, 253 (D. Mass. 2016) (citing Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)). As the moving party, Plaintiff bears the burden of satisfying each of these four elements. See Nieves–Marquez v. P.R., 353 F.3d 108, 120 (1st Cir. 2003). While the Court must consider all four factors, a movant's failure to demonstrate a likelihood of success on the merits is fatal to a request for either form of relief. Kilmowicz, 192 F. Supp. 3d at 253 (citation omitted). Therefore "[i]f the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

Preliminary injunctions function to "preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). As a result, "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." Id. (citing Indus. Bank of Wash. v. Tobriner, 405 F.2d 1321, 1324 (D.C. Cir. 1968)). The granting of a preliminary injunction is "an 'extraordinary and

drastic remedy' . . . that 'is never awarded as of right.'" Voice of the Arab World, 645 F.3d at 32 (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)).

### III.  DISCUSSION

#### A.  Likelihood of Success

Plaintiff argues that she is likely to succeed on the merits of her claim because Defendants, as the foreclosing entity, failed to comply with the terms of the Mortgage as required by law. [ECF No. 9 at 2–3, 7–10]. The crux of Plaintiff's claim is that Defendants do not have authority to accelerate or foreclose on the Mortgage due to a procedural error in the December 1, 2021 Notice of Acceleration. [Id.]. Specifically, the Notice of Acceleration says that the Borrowers "*may* still have the right to reinstate the loan," and that Defendants "reserve[] the right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due," which, in Plaintiff's view, impermissibly created an ambiguity about whether she had a right to reinstate or to challenge the default and acceleration in court. [Id. at 2]. Plaintiff argues that the use of the conditional word "may" should not have been used in the Notice of Acceleration because the Mortgage states that there is an unequivocal right to reinstate after acceleration. She contends that this breached the Mortgage and, in turn, violated Massachusetts General Laws ch. 183 § 21, which requires strict compliance with the terms of a mortgage before exercising the power of sale. [Id. at 2–3, 6–10].

In support, Plaintiff relies on Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1214, 1218 (Mass. 2015), in which the Massachusetts Supreme Judicial Court ("SJC") held that a foreclosure was void where the defendant's notice of default failed to strictly comply with the requirements of paragraph 22 of the standard mortgage—also at issue here. Both in this case and in Pinti, paragraph 22 informs the mortgagor of, among other things, the action required to cure

6

the default, and the right of the mortgagor to bring a court action to challenge the existence of a default or to present any defense to acceleration and foreclosure.  See [ECF No. 9 at 4].  The notice of default in Pinti stated that the borrowers "have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [the borrower] may have to acceleration and foreclosure and sale."  Pinti, 33 N.E.3d at 1215–16.  In the view of the SJC, the notice of default was insufficient to comply with paragraph 22 because, in a non-judicial foreclosure state like Massachusetts, the plaintiffs "could be misled into thinking that they had no need to initiate a preforeclosure action against the mortgagee but could wait to advance a challenge or defense to foreclosure as a response to a lawsuit initiated by the mortgagee—even though, as a practical matter, such a lawsuit would never be brought."  Id. at 1222.

Plaintiff also relies on Fed. Nat'l Mortg. Ass'n v. Marroquin, 74 N.E.3d 592, 593 (Mass. 2017), where the SJC reiterated that a notice of default must "strictly compl[y] with paragraph 22 of the standard mortgage."  The notice of default in Marroquin was found to be inadequate because it stated that the borrower "may, if required by law or the borrower's loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of the borrower's property if all amounts past due are paid within the time permitted by law" and further that the borrower "may have the right to bring a court action to assert the non-existence of a default or any other defense the borrower may have."  Id. at 598 (internal quotation marks and brackets omitted).  The SJC agreed with the lower court's holding that the language in the notice of default "significantly, and inexcusably, differed from the language in paragraph 22 of the mortgage, and watered . . . down the rights provided in that paragraph to the mortgagor homeowner."  Id. (internal quotation marks omitted).

Here, in response to Plaintiff's argument, Defendants agree that "an entity foreclosing a residential mortgage must strictly comply with the notice of default provisions required by Paragraph 22 of the mortgage" and that "[s]ending the notice of default prescribed by Paragraph 22 is a 'prerequisite to use of the mortgage's power of sale[.]'" [ECF No. 19 at 7 (quoting Pinti, 472 Mass. at 236)]. The parties also agree that the Notice of Default sent to Plaintiff on February 5, 2021 did strictly comply with Paragraph 22 by stating unequivocally that "[y]ou have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale[.]" [ECF No. 19 at 9; ECF No. 19-10 at 8]; see [ECF No. 22].

Beyond that, however, Defendants argue that in an attempt to manufacture a Marroquin issue, Plaintiff is conflating the requirements for notices of default and notices of acceleration.[3] In their view, although the Mortgage requires the lender to send a notice of default, the contract contains no similar requirement regarding a notice of acceleration nor is such notice is required by any Massachusetts statute. [ECF No. 19 at 9–10]. Further, Defendants allege that the equivocal language in the December 1, 2021 Notice of Acceleration "conforms to and follows the language in [P]aragraph 19 of the Mortgage[.]" [Id. at 10].

---

[3] Defendant also raises a standing argument, alleging that Plaintiff, in her personal capacity, has no legally protectable interest in the Mortgage that Defendants seek to foreclose. [ECF No. 19 at 5–7]. While it remains unclear to the Court whether Plaintiff has standing in her personal capacity, she has plausibly alleged that she is the personal representative of Lydia Pleskun's estate. [Am. Compl. ¶ 17; ECF No. 12-5]. Pursuant to Massachusetts General Laws ch. 190B § 3-703(c), "a personal representative . . . has the same standing to sue and be sued in the courts of the commonwealth and the courts of any other jurisdiction as the decedent had immediately prior to death." Thus, the Court finds that Plaintiff, as personal representative of Lydia Pleskun's estate, does have standing to challenge Defendants attempted foreclosure and sale of the property at issue. Having concluded that Plaintiff has, at minimum, standing to challenge the foreclosure and sale in her capacity as personal representative, the Court need not reach the issue of whether Plaintiff has standing in her individual capacity.

The Court begins with Massachusetts General Laws ch. 183 § 21, which in relevant part provides that after any default and prior to exercising the power of sale the lender must "first comply[ ] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages[.]"  As noted above, the terms relevant to this dispute are located in Paragraphs 19 and 22 of the Mortgage.  Again, the parties do not dispute that Paragraph 22—which mirrors the language of the mortgage provision at issue in Pinti and Marroquin—sets forth the actions the lender must take prior to accelerating the Mortgage, including providing notice of default to the borrower and unequivocally informing the borrower of the rights to reinstate after acceleration and to bring a court action to assert the non-existence of a default or any other defense.  [Am. Compl. ¶ 17]; see also Pinti, 33 N.E.3d at 1215 n.6; Marroquin 74 N.E.3d at 594 n.3.  The parties similarly do not dispute that Paragraph 19 describes the Borrower's right to reinstate after acceleration and sets forth the conditions the Borrower must meet in order to do so.  See [Am. Compl. ¶ 18; ECF No. 19 at 9–10].

It remains axiomatic at this point that a foreclosure pursuant to Massachusetts General Laws ch. 183 § 21 "is invalid unless the notice of default strictly complies with paragraph 22 of the standard mortgage," Marroquin, 74 N.E.3d at 593 (citing Pinti, 33 N.E.3d at 1214, 1218) and it is not disputed that Defendants provided to Plaintiff a notice of default on February 5, 2021 that met their obligations under the applicable statue and case law.

Plaintiff, relying on the logic of Pinti and Marroquin, argues that the prohibition against use of conditional language to describe a mortgagor's rights in a notice of default applies equally to a notice of acceleration.  [ECF No. 9 at 7–10].  In Plaintiff's view, Defendants' inclusion of conditional language in a notice of acceleration regarding the mortgagor's rights to reinstate or to challenge the default, acceleration, or sale in court sufficiently nullifies any prior accurate notice

9

of said rights such that any subsequent acceleration, foreclosure, or sale is invalid. [Id.]. Pinti and Marroquin, however, speak only to the lender's obligation with respect to the notice of default, and not to any subsequent correspondence by the lender. In fact, neither case offers a view on what language should or should not be included in a notice of acceleration. Moreover, Plaintiff does not cite any case law holding that a foreclosure is void as a result of conditional language in a notice of acceleration that describes the borrower's rights to reinstate after acceleration or to assert the non-existence of default or a defense to acceleration or sale. See generally [Am. Compl.; ECF No. 9]. Plaintiff similarly cites no case or statute requiring a lender to even send a notice of acceleration, and the First Circuit has held that the corresponding provision of the standard mortgage—paragraph 19, which advises the borrower of the conditions under which they can reinstate their mortgage after acceleration—"does not, on its own, impose any notice requirements on [the lender]." Thompson v. JPMorgan Chase Bank, N.A., 982 F.3d 809, 812 (1st Cir. 2020).

Paragraph 19, which sets forth the conditions a borrower must meet if they want to invoke their unequivocal right to reinstate after acceleration, [Am. Compl. ¶ 18 ("*If* Borrower meets certain conditions, Borrower shall have the right to enforcement of this Security Instrument discontinued . . . .") (emphasis added)] is, on its face, conditional. It informs the borrower that it can invoke its right to reinstate, but only if it first meets certain conditions. The final sentence of Paragraph 19 states that the "right to reinstate shall not apply in the case of acceleration under Section 18[,]" which refers to a scenario where all or part of the property is transferred without the lender's prior written consent. [Id.; ECF No. 9-2 ¶ 18]. Thus the December 1, 2021 Notice of Acceleration which states that the Borrower "may still have the right to reinstate the loan" and "please also note, however, that [the lender] reserves the right, if

allowed by the loan documents and applicable law, to refuse to accept reinstatement and to insist upon full payment of all amounts due" conforms to the language of Paragraph 19.  While Plaintiff's argument—that the conditional language in the December 1, 2021 Notice of Acceleration muddies the water regarding the Borrower's rights—may be colorable, the Court cannot conclude that Plaintiff is likely to prevail on her claim that Defendants failed to satisfy the requirements set forth in Paragraph 22, and in doing so failed to comply with the terms of the Mortgage.

A preliminary injunction is "an 'extraordinary and drastic remedy,'" Voice of the Arab World, 645 F.3d at 32 (quoting Munaf, 553 U.S. at 689–90), which "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).  Plaintiff has failed to make the requisite "clear showing" at this stage.  Even if Plaintiff's claim is plausible, it does not satisfy the high standard for injunctive relief which requires likely success on the merits.  Because Plaintiff has not shown that she is likely to prevail on the merits, the Court need not address the other elements required for injunctive relief.

## IV. CONCLUSION

Accordingly, Plaintiff's motion for a preliminary injunction and temporary restraining order, [ECF No. 9], is DENIED.

**SO ORDERED.**

May 20, 2022                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE